## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Martin Carpenter and Jaclyn Ott on Behalf of Themselves and all Others Similarly Situated,

Plaintiffs,

v.

Marathon Petroleum Corporation and St. Paul Park Refining Co. LLC, DBA Marathon St. Paul Park Refinery

Defendants.

Case No.

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

### CLASS ACTION COMPLAINT AND JURY DEMAND

COME NOW plaintiffs Martin Carpenter and Jaclyn Ott ("Plaintiffs" or "plaintiffs"), by and through their undersigned attorneys, to obtain compensatory damages, injunctive relief and costs of suit from the named Defendants, and complain and allege, in this Class Action Complaint, as follows:

### I.      INTRODUCTION

1.      This is a Civil Action to secure redress from the Defendants for damages suffered by members of the putative Class defined below (the "Class Members") as a result of the Defendants' wrongful emission, release, and discharge of sulfur dioxide, hydrogen sulfide, ammonia, hydrochloric acid, nitrogen oxides, lead, hydrogen cyanide, carbon disulfide, ethylbenzene, hydrogen fluoride, hexane, benzene, volatile organic compounds (VOCs), carbon monoxide, particulate matter and toxic and other hazardous substances ("Refinery Contaminants") from their St. Paul Park refinery located at 301 St. Paul Park

1

Rd., St. Paul Park, Minnesota, 55071 (the "St. Paul Park Refinery"). The St. Paul Park Refinery is one of the largest sources of air pollution in Minnesota

2.     Plaintiffs, the Class Members and/or their properties have been exposed to toxic and hazardous substances, particulate matter, vapors, and other airborne matter released as a result of Defendants' operation of their St. Paul Park Refinery.  Plaintiffs have also been subjected to unreasonable noxious odors, noise, debris particles, and fumes as a result of Defendants' operation of their St. Paul Park Refinery.

3.     Refinery Contaminants have been linked to asthma, cancer, lung disease, nervous system harm, severe headaches, insomnia, dizziness, nausea, vomiting, gastrointestinal pain and other serious illness.

4.     Defendants' operations at their St. Paul Park Refinery resulted and continue to result in the release of airborne matter that scatters so that persons and properties in the Class Area, identified in Figure 1, are exposed, and continue to be exposed, to toxic and hazardous materials, including Refinery Contaminants, noxious odors, debris particles, vapors and fumes. Plaintiffs, the Class Members and their properties and the air thereupon, have been contaminated with Refinery Contaminants emitted by Defendants' operations at the St. Paul Park Refinery.

5.     The ongoing release of Refinery Contaminants resulting from Defendants' continuing and ongoing operations at the St. Paul Park Refinery, as well as noxious odors, debris particles, vapors and fumes, has impacted Plaintiffs' and the Class Members'

properties, is a blight on Plaintiffs' and the Class Members' community and deprives Plaintiffs and the Class Members of their free use and enjoyment of their property.

6.      The impositions described above and herein have also harmed Class Members by dramatically reducing the value of their homes.

7.      Defendants' St. Paul Park Refinery operations violate applicable rules, statutes, laws and codes and exceed the permissible level of airborne emissions of certain refinery Contaminants.

8.      The gravity of the harm to Plaintiffs and the Classes through exposure to Refinery Contaminants and hazardous substances, unreasonable noxious odors, noise, vapors, debris particles, and fumes from Defendants' operations at their St. Paul Park Refinery outweighs the utility of Defendants' St. Paul Park Refinery operations and its expansions and increased emissions.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d). The amount in controversy exceeds $5,000,000; the Class comprises at least 100 plaintiffs, and at least one member of the putative Class of plaintiffs is a citizen of a state different from a defendant.

10.     Venue is appropriate in the District of Minnesota because the acts which give rise to this Complaint occurred and continue within the District.

## II.    PARTIES

**Plaintiffs**

11.    Plaintiffs own or owned residential properties in St. Paul Park, within the parameters of the Class Area set forth below.

Martin Carpenter

12.    Plaintiff Martin Carpenter is a resident of St. Paul Park, Minnesota and a citizen of the State of Minnesota.  Plaintiff Carpenter owns residential property located within the Class Area at the 1100 block of 5th St. and has resided there for approximately twenty-eight years.  As a result of Defendants' continuing and ongoing acts or omissions, Refinery Contaminants and other hazardous substances have entered into and onto his property, have contaminated his property, air, land, dwelling and surrounding environment, thereby causing Martin Carpenter to suffer damage to his property and personal finance, loss of the use and enjoyment of his property, significant annoyance and inconvenience, and destruction of his community.

13.    Defendants' acts and/or omissions have also subjected Martin Carpenter to noise, noxious odors, debris particles, vapors and fumes on his property and surrounding environment, thereby causing Martin Carpenter to suffer damage to his property and personal finance, loss of the use and enjoyment of his property; significant annoyance and inconvenience; and destruction of his community. Indeed, Plaintiff Carpenter avoids going outside when the pollution is heavy. Where possible, he instead waits for wind directions to change, thus minimizing exposure to the odors and the physical symptoms the pollutants

induce. He also obtained a gym membership so that he would not have to exercise outside and be subjected to Refinery Contaminants.

14.     Regrettably, Plaintiff Carpenter has not been able to avoid the nuisance stemming from the St. Paul Park Refinery. Loud alarms at the facility go off late at night and early in the morning. Where the St. Paul Park Refinery pollution is particularly bad overnight, Plaintiff Carpenter wakes up feeling ill. Moreover, the noxious odors from the St. Paul Park Refinery find their way into Plaintiff Carpenter's home.

15.     For the above-stated reasons, the Refinery Contaminants, noise, noxious odors, debris particles, vapors and fumes have unreasonably interfered with Martin Carpenter's exclusive use and enjoyment of his property causing significant harm to Plaintiff Carpenter.

Jaclyn Ott

16.     Plaintiff Jaclyn Ott is a resident of St. Paul Park, Minnesota and a citizen of the State of Minnesota.  Plaintiff Jaclyn Ott owns residential property located within the Class Area at the 1200 block of Chicago Avenue and has resided there for eight years.  As a result of Defendants' continuing and ongoing acts or omissions, Refinery Contaminants and other hazardous substances have entered into and onto her property, have contaminated her property, air, land, dwelling and surrounding environment, thereby causing Jaclyn Ott to suffer damage to her property and personal finance, loss of the use and enjoyment of her property, significant annoyance and inconvenience, and destruction of her community.

17.     Defendants' acts and/or omissions have also subjected Jaclyn Ott to noise, noxious odors, debris particles, vapors and fumes on her property and surrounding environment, thereby causing Jaclyn Ott to suffer damage to her property and personal finance, loss of the use and enjoyment of her property; significant annoyance and inconvenience; and destruction of her community.  Plaintiff Ott, who is an avid gardener, has found her outdoor time marred by the odorous pollutants disseminated from the St. Paul Park Refinery, as well as the breathing issues caused by her exposure to these chemicals.  Indeed, Plaintiff Ott, who is asthmatic, has suffered breathing issues with increased regularity upon moving to St. Paul Park eight years ago.  As a result of Defendants' acts and/or omissions, Refinery Contaminants, noise, noxious odors, debris particles, vapors and fumes have unreasonably interfered with Jaclyn Ott's exclusive use and enjoyment of her property causing significant harm to Jaclyn Ott.

**Defendants**

18.     Defendant Marathon Petroleum Corporation is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 539 South Main Street, Findlay, Ohio, 45840.

19.     Defendant St. Paul Park Refining Co. LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 539 South Main Street, Findlay, Ohio, 45840.

20.     Through their wrongful acts and omissions, including the emission, release, discharge and failure to properly control, curb, contain and remediate Refinery

6

Contaminants, noise, noxious odors, vapors, debris particles and fumes at and emanating from their St. Paul Park Refinery, Defendants have caused, and continue to cause, Refinery Contaminants, noise, noxious odors, debris particles, vapors and fumes to enter onto Plaintiffs' and the Class Members' properties, have contaminated their property, air, land, dwelling and surrounding environment, and thereby caused plaintiffs and the Class Members to suffer damage to their property and personal finance, loss of the use and enjoyment of their property and destruction of their community.  As a result of Defendants' continuous and ongoing acts and omissions, Refinery Contaminants, noise, noxious odors, vapors, debris particles, and fumes have unreasonably interfered with Plaintiffs' and the Class Members' exclusive use and enjoyment of their property, causing significant harm to plaintiffs and the Class Members.

21.     Defendants have failed, and continue to fail, to prevent the Refinery Contaminants, noise, noxious odors, vapors, debris particles, and fumes which were created, emitted, released and discharged from their St. Paul Park Refinery, from being used in a manner that resulted in harm, or threatened harm, to the health, safety, and welfare of Plaintiffs as well as Plaintiffs' use and enjoyment of their properties.

### III.    FACTUAL ALLEGATIONS

22.     Plaintiffs Carpenter and Ott, Class Members, and their properties have been, and continue to be, exposed to Refinery Contaminants, hazardous substances, noise, noxious odors, vapors, debris particles and fumes released as a result of Defendants' ongoing and continuing conduct in operating their St. Paul Park Refinery.

23.     Defendants' St. Paul Park Refinery produces gasoline, distillates, asphalt, heavy fuel oil, propane and refinery-grade propylene.

24.     Defendants' St. Paul Park Refinery operations result in the generation, creation, release, emission and discharge of Refinery Contaminants, hazardous substances, noise, noxious odors, vapors, debris particles and fumes.

25.     These Refinery Contaminants, hazardous substances, noise, noxious odors, vapors, debris particles and fumes became airborne or otherwise scattered and travel through the air so that persons and properties in the Class Area, as set forth below, were and are exposed to hazardous materials, Refinery Contaminants, noise, noxious odors, vapors, debris particles and fumes.

26.     Records requests made to the Minnesota Pollution Control Agency have also unearthed years of complaints received concerning the St. Paul Park Refinery—including reports of "terrible odor outside [that] has been going on for over a week, and [is] now seeping into building[s]" that cause "headaches", "tight chest" and make it "hard to breath". *See* Exhibit 1. Other residents have reported feeling lightheaded as a result of the St. Paul Park Refinery pollution. *Id.*   As a result of the refinery activity, residents also report waking up with headaches and feeling ill upon waking.

27.     There are ample records to corroborate residents' complaints regarding the St. Paul Park Refinery. According to the EPA, there have been four formal enforcement actions and two informal actions against the St. Paul Park Refinery in the past five years.[1]

---

[1] Detailed Facility Report | ECHO | US EPA

28.     In 2018 alone, the St. Paul Park Refinery's emissions included over 850,000 pounds of carbon monoxide, over one million pounds of nitrogen oxides, tens of thousands of pounds of particulate matter, over 148,000 pounds of sulfur dioxide, and over 758,000 pounds of volatile organic compounds.[2]

29.     Many of the pollutants released from the St. Paul Park Refinery are invisible to the naked eye and are identified by air quality testing, noxious odors, and the health symptoms that they induce. However, the large flames from the refinery flaring off chemicals and the white fogs of pollution from the St. Paul Park Refinery are striking.



30.     There are other glaring visual indicators that all is not well in St. Paul Park. Residents of the community report a yellow-brown film of debris staining their windows, vehicles, and roofs.  Residents also report having to replace the air filters in their home heating and cooling systems with much greater regularity than normal.  Filters expected to

---

[2] Permitted facility air emissions data | Minnesota Pollution Control Agency (state mn.us)

last months are found to be covered in debris and in need of replacement within weeks of installation.

31.     Plaintiffs, the Class Members, and their properties have been contaminated with toxic and hazardous substances released from Defendants' St. Paul Park Refinery.

32.     Wind and other airborne releases of the Refinery Contaminants, wastes, vapors, debris particles and fumes have caused these hazardous substances to spread within the Class Area.  The hazardous substances were and are transported by wind, water and other natural and human processes onto and into plaintiffs' and the Class Members' homes, property and persons.

33.     The St. Paul Park Refinery's nuisance is not restricted to air pollution. The refinery emits loud alarms, including late at night and early in the morning, that interfere with the peaceful enjoyment and use of property. Class Members also become highly distressed upon hearing evacuation announcements issued by the St. Paul Park Refinery PA system to refinery employees.

34.     The above-described nuisances also harm the Plaintiffs and Class Members by negatively impacting the value of their property.

35.     Plaintiffs and the Class Members seek redress and damages for economic losses, such as loss of property value and the interference with the use and enjoyment of their property; compensatory damages; the cessation of all releases of Refinery Contaminants into the Class Area; noise abatement; odor abatement; interest; costs of suit

and other damages as the result of the carelessness, recklessness, negligence and willful and wanton violation of law by the Defendants.

36.     Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to Refinery Contaminants and wastes, handled, stored, generated, processed, released, discharged and emitted Refinery Contaminants, wastes, particulate matter, vapors, debris particles and fumes throughout the Class Area, while failing to warn residents of the dangers such activities posed.

37.     Defendants, again despite their knowledge of the serious health and environmental effects associated with Refinery Contaminants, and despite their knowledge of the impacts of Refinery Contaminants, wastes, noise, noxious odors, vapors, debris particles and fumes from their St. Paul Park Refinery on plaintiffs and the Class Members, failed to abate the release, discharge and emission of Refinery Contaminants, wastes, noise, noxious odors, vapors, debris particles and fumes.

38.     The exposures, pollution, noise, noxious odors and disturbance caused by Defendants' St. Paul Park Refinery operations constitute a blight on the community. Defendants' actions and omissions deprive plaintiffs of the use and enjoyment of their properties and expose plaintiffs to toxic and hazardous substances. The gravity of the harm to plaintiffs and the Classes through exposure to Refinery Contaminants and hazardous substances, unreasonable noxious odors, noise, vapors, debris particles and fumes from Defendants' operations at their St. Paul Park Refinery outweighs the utility of Defendants' St. Paul Park Refinery operations.

## IV.    CLASS ALLEGATIONS

39.     This Class Action is being filed by the Plaintiffs, pursuant to Federal Rule of

Civil Procedure 23, on behalf of themselves and others similarly situated.

40.     Plaintiffs seek to certify the following class, which is subject to modification

as discovery will disclose the location of all class members, defined as:

> Any and all individuals who owned residential property at any time
> beginning in 2018 to present that are located within two (2) miles of the
> property line boundary of Defendants' facility asset forth in *Figure 1* below.

*Figure 1: Class Boundary Map*:



41.     To the extent revealed by discovery and investigation, there may be additional appropriate classes and/or subclasses from the above class definitions which are broader and/or narrower in time or scope of exposure.

42.     Excluded from the class are Defendants' officers and directors and members of their immediate families; and the judicial officers to whom this case is assigned, their staff, and the members of their immediate families.

43.     Excluded from the class are any local, state, or federal government entities.

44.     Members of the Class and/or their property have been exposed to and continue to be exposed to toxic and hazardous substances, Refinery Contaminants, wastes, noise, noxious odors, vapors, debris particles and fumes released from Defendants' St. Paul Park Refinery.

45.     This Court may maintain these claims as a Class Action pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4).

46.     Numerosity – Fed. R. Civ. P. 23(a)(1): The members of the Class are so numerous that joinder of all members is impractical.

47.     The number of properties located within the Class Area exceeds 100, and, therefore, the number of members of the Class likely also exceeds 100 people, in satisfaction of Fed. R. Civ. P. 23 (a)(1).

48.     Commonality – Fed. R. Civ. P. 23(a)(2): There are common questions of law and fact that affect the rights of every member of the Class, and the types of relief sought are common to every member of the Class.  The same conduct by Defendants has injured

or will injure every member of the Class.  Common questions of law and/or fact common

to the Class include, but are not limited to:

a.      Whether Defendants, through their acts or omissions, proximately caused Refinery Contaminants to be deposited in the Class Area;

b.      Whether Defendants, through their acts or omissions, proximately caused fumes, vapors, noxious odors, debris particles to be released into the Class Area;

c.      Whether and how Defendant intentionally, recklessly, willfully, wantonly, maliciously, grossly and negligently emit, release, discharge and/or fail to remediate or otherwise abate Refinery Contaminants, fumes, vapors, noxious odors, and debris particles;

d.      Whether Defendants' release, emission or discharge of Refinery Contaminants, fumes, vapors, noxious odors, and debris particles onto plaintiffs' and Class Members' properties, or their failure to remove or abate Refinery Contaminants, fumes, vapors, noxious odors, and debris particles from plaintiffs' and Class Members' properties constitutes a private nuisance;

e.      Whether Defendants' release, emission or discharge of Refinery Contaminants, fumes, vapors, noxious odors, and debris particles onto plaintiffs' and Class Members' properties, or their failure to remove or abate Refinery Contaminants from plaintiffs' and Class Members' properties constitutes a trespass;

f.      Whether Defendants proximately caused Refinery Contaminants, fumes, vapors, noxious odors, and debris particles to be released, emitted or discharged into the environment, where plaintiffs' and Class Members' properties have been exposed to such releases;

g.      Whether Defendants violated applicable standards concerning production, handling, storing, transporting, using, disposing and/or failure to properly control the release, emission or discharge of Refinery Contaminants, fumes, vapors, noxious odors, and debris particles;

h.      Which steps Defendants have and have not taken in order to control their emissions through the construction, maintenance and operation of their St. Paul Park Refinery;

i.    Whether it was reasonably foreseeable that Defendants' failure to properly construct, maintain and operate the facility would result in an invasion of Plaintiffs' property interests

j.    Which steps Defendants have and have not taken in order to control their emissions through the construction, maintenance and operation of their St. Paul Park Refinery;

k.    Whether Defendant owed any duties to Plaintiffs;

l.    Which duties Defendant owed to Plaintiffs;

m.    Whether the degree of harm suffered by Plaintiffs and the class constitutes a substantial annoyance or interference; and

n.    The proper measure of damages incurred by Plaintiffs and the Class.

49.    These questions of law and/or fact are common to the Class and predominate over any questions affecting only individual Class Members in satisfaction of Fed. R. Civ. P. 23 (b)(3).

50.    Typicality – Fed. R. Civ .P. 23 (a)(3): Plaintiff Carpenter and Ott's claims are typical of the claims of the Class they seeks to represent, as required by Fed. R. Civ. P. 23(a)(3), in that all claims are based upon the same factual and legal theories and the same course of conduct by Defendants.  Indeed, if brought and prosecuted individually, the claims of each Class member would utilize the same complex evidence, including expert testimony, and seek the same type of relief.  It is the same conduct by Defendants that has injured every member of the Class.  The claims of Plaintiffs and the other Class members have a common cause and their damages are of the same type.  The principal issue in this matter involves Defendants' conduct in wrongfully emitting, releasing, discharging, handling, storing, transporting, processing, disposing, and/or failing to remediate or abate

Refinery Contaminants, fumes, vapors, noxious odors, and debris particles at and emanating from their St. Paul Park refinery, which impacts all Members of the Class.

51.    Adequacy – Fed. R. Civ. P. 23(a)(4): Plaintiffs Carpenter and Ott will fairly and adequately represent and protect the interests of the Class, as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs have retained counsel with substantial experience in the prosecution of environmental class actions and complex environmental litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and they have the financial resources to do so.  Neither these Plaintiffs nor counsel has any interest adverse to those of the Class.

52.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants and/or because adjudications respecting individual members of the Class would, as a practical matter, be dispositive of the interests of the other members or would risk substantially impairing or impending their ability to prosecute their interests.

53.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all Members of the Class, thereby making relief in the form of an injunction requiring Defendants to abate the nuisance and the abatement of all noxious odors, fumes, vapors, and debris particles appropriate.

54.     Plaintiffs and the Class Members have suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful and wrongful conduct.

55.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23 (b)(3). Absent a class action, most members of the Class likely would find the cost of litigating their claims to be prohibitive and will have no effective remedy at law. The Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. The proposed class action is manageable.

56.     Class certification is also appropriate because this Court can designate particular claims or issues for class-wide treatment and may designate one or more subclasses pursuant to Fed. R. Civ. P. 23(c)(4).

57.     Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each Member of the Class who has suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Members of the Class.

58.     No unusual difficulties are likely to be encountered in the management of this action as a class action.

59.     Neither Plaintiffs nor the Class Members were in any way responsible for the release, emission or discharge of Refinery Contaminants, fumes, vapors, noxious odors, and debris particles from Defendants' St. Paul Park Refinery.

## V.   COUNTS

### COUNT I
### Statutory and Common Law Private Nuisance

60.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint as if set forth in full herein.

61.     Defendants' past, present and/or continuing and ongoing acts and/or omissions constitute a continuing private nuisance in that Defendants used and/or continue to use their property in a manner that has resulted in a substantial and unreasonable impact and burden on plaintiffs and the Class Members. Defendants' impact and burden come in the form of significant personal harm, inconvenience, serious annoyance, discomfort, and fear of adverse health effects incidental to Defendants' St. Paul Park Refinery operations, associated noise, debris particles, noxious odors, fumes, vapors and the emission, and discharge and release of Refinery Contaminants.

62.     Defendants' past, present and/or continuing activities, acts and/or omissions at their St. Paul Park Refinery constitute a continuing private nuisance resulting in interference with the Class Members' right to the exclusive use and enjoyment of their properties.

63.     Defendants intentionally, recklessly, and negligently cause, and have caused, noxious and dangerous substances, produced and controlled by Defendants, to physically

18

invade Plaintiffs' land and property. This invasion of noxious, hazardous and toxic substances contaminates Class Members' properties and the surrounding environment, exposes Class Members to noxious, hazardous and toxic substances and substantially and unreasonably interferes with Class Members' free use and enjoyment of their properties.

64.     The noxious odors invading Plaintiffs' property are indecent and offensive to the senses, injurious to health, and obstruct the free use of their property so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

65.     Defendants owed, and continue to owe, a duty to Plaintiffs to prevent and abate the interference with Plaintiffs' comfortable enjoyment of life and property as well as Defendants' invasion of the private interests of the Plaintiffs.

66.     At no point did Plaintiffs consent to the invasion of their property by noxious odors or the pollutants described herein.

67.     Defendants knew or should have known that their behavior would damage and interfere with Plaintiffs' and Class Members' free enjoyment of their property.

68.     As a foreseeable, direct and proximate result of the foregoing conduct of Defendants, Plaintiffs and Class Members suffered damages as alleged herein.

69.     Citizens have lodged multiple complaints against the St. Paul Park Refinery. Despite this, Defendants failed rectify the nuisances emanating from the refinery.

70.     Defendants' conduct in operating its St. Paul Park Refinery, releasing Refinery Contaminants, exposing plaintiffs and the Class Members to hazardous and toxic

substances, and subjecting them to noise, debris particles, noxious odors, fumes and vapors is intentional, negligent and unreasonable.

71.     The hazardous and toxic substances, Refinery Contaminants, noxious odors, noise, debris particles, odors, fumes and vapors continue to contaminate plaintiffs' and the Class Members' properties and the surrounding environment, thereby exposing plaintiffs and the Class Members to the hazardous and toxic substances and subjecting them to noxious odors and noise.

72.     Defendants' past, present and/or continuing acts and/or omissions, resulting in the release of and/or failure to properly dispose of refinery Contaminants, constitutes a private nuisance in that Defendants have used their property in a manner that has unreasonably interfered with Class Members' property interests, health and safety.

73.     As a result of Defendants' acts and omissions, plaintiffs and the Class Members have suffered significant harm in the form of exposure to Refinery Contaminants, hazardous substances, noise, noxious odors, vapors, fumes, debris particles, annoyance, displacement, and economic loss for which damages are justified.

74.     As a direct and proximate result of Defendants' misconduct as set forth herein, plaintiffs and Class Members have suffered and continue to suffer economic losses, such as the loss of value to their property; loss of use and enjoyment of their property; significant annoyance and inconvenience; the destruction of their community and other damages.

75.     The private nuisance that Defendants created is a continuing nuisance in that it has continued and remains unabated.

76.     Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to Refinery Contaminants, hazardous substances, noise, noxious odors, vapors, fumes, and debris particles and despite orders and warnings from health and environmental regulators and members of the community, avoid taking all appropriate steps to eliminate, reduce and properly remediate Refinery Contaminants, hazardous substances, noise, noxious odors, vapors, fumes, and debris particles released into the Class Area or to mitigate dangers created by their release, discharge and emission.

77.     The gravity of the harm to plaintiffs and the Class Members through exposure to Refinery Contaminants and hazardous substances, unreasonable noxious odors, noise, vapors, debris particles and fumes from Defendants' operations at their St. Paul Park Refinery outweighs the utility of defendants' St. Paul Park Refinery operations.

78.     In the alternative, Defendants' conduct in operating its St. Paul Park Refinery and releasing Refinery Contaminants and exposing plaintiffs and the Class Members to the hazardous and toxic substances and subjecting them to noise, dust, soot, noxious odors, fumes and vapors is unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct.

79.     Defendants, by releasing, emitting, discharging, and dispersing Refinery Contaminants, noise, debris particles, noxious odors, fumes, and vapors into the Class Area and by failing to properly remediate and allowing those contaminants and pollutants to

remain in the environment, and/or concealing knowledge of same, have engaged in abnormally dangerous, ultrahazardous, and inherently or intrinsically dangerous activities for which they are strictly liable to the Class Members.

80.     Defendants' activities pose a high degree of risk of harm to the Class Members. The likelihood that the harm that results from the Defendants' activities will be great is based on the fact that Defendants' Refinery Contaminants contain sulfur dioxide, hydrogen sulfide, ammonia, hydrochloric acid, nitrogen oxides, lead, hydrogen cyanide, carbon disulfide,  ethylbenzene, hydrogen fluoride, hexane, benzene, volatile organic compounds (VOCs), carbon monoxide, particulate matter and toxic and other hazardous substances—which have been linked to asthma, cancer, lung disease, nervous system harm, severe headaches, insomnia, dizziness, nausea, vomiting, gastrointestinal pain and other serious illness; and that Defendants' activities continues to cause airborne pollution at levels higher than safe and healthy limits.

81.     The risks posed by Defendants' release of Refinery Contaminants in a densely populated area cannot be eliminated by the exercise of reasonable care, and no safe way exists to release Refinery Contaminants into such a densely populated area in the manner Defendants are doing so.  There is no safe way to emit, release and discharge Refinery Contaminants in the Class Area given the capacity of Refinery Contaminants to cause asthma, cancer, lung disease, nervous system harm, severe headaches, insomnia, dizziness, nausea, vomiting, gastrointestinal pain, and other serious illness and adverse health effects in humans.  The serious health and environmental risks posed by the Refinery

Contaminants Defendants emitted, discharged, released and disposed of in such a densely populated area could not have been eliminated by the exercise of reasonable care on the part of Defendants.

82.    Defendants' emission, release and discharge of Refinery Contaminants is neither a matter of common usage nor appropriate to the place where it is carried out. Defendants' failure to properly remediate Refinery Contaminants which they emitted, discharged, released and disposed of in the Class Area was neither a matter of common usage nor appropriate to the place where it was carried out.

83.    Separate and apart from acting negligently, at all relevant times Defendants caused injury and damages to plaintiffs and the Members of the Class, and/or their property, through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

84.    Defendants' conduct amounts to unlawful and tortious nuisance conduct under both the common law and Minn. Stat. § 561.01.

85.    Defendants' substantial and unreasonable interference with Plaintiffs' and Class Members' use and enjoyment of their property constitutes a nuisance for which Defendants are liable to Plaintiffs and Class Members for all damages arising from such nuisance, including, but not limited to, compensatory damages.

    **WHEREFORE**, Plaintiffs Carpenter and Ott demand judgment against Defendants for compensatory damages; the cessation of all releases of Refinery Contaminants

into the Class Area; noise abatement; odor abatement; interest; costs of suit as provided for by law; and such other relief as the Court may deem just and proper.

## COUNT II
## Strict Liability

86.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

87.     Defendants, by releasing, emitting, discharging and dispersing Refinery Contaminants, noise, debris particles, noxious odors, fumes and vapors into the Class Area and by failing to properly remediate the emission of those contaminants and pollutants, and/or concealing knowledge of same, have engaged in abnormally dangerous, ultrahazardous, and inherently or intrinsically dangerous activities for which they are strictly liable to the Class Members.

88.     Defendants' activities pose a high degree of risk of harm to the Class Members. The likelihood is that the harm resulting from the Defendants' activities will be great because Defendants' Refinery Contaminants contain sulfur dioxide, hydrogen sulfide, ammonia, hydrochloric acid, nitrogen oxides, lead, hydrogen cyanide, carbon disulfide, ethylbenzene, hydrogen fluoride, hexane, benzene, volatile organic compounds (VOCs), carbon monoxide, particulate matter and toxic and other hazardous substances— which have been linked asthma, cancer, lung disease, nervous system harm, severe headaches, insomnia, dizziness, nausea, vomiting, gastrointestinal pain  and other serious illness; and that Defendants' activities continue to cause airborne pollution at levels higher than safe and healthy limits.

24

89.     The risks posed by Defendants' release of Refinery Contaminants in a densely populated area cannot be eliminated by the exercise of reasonable care, and no safe way exists to release Refinery Contaminants into such a densely populated area in the manner Defendants are doing so.  There is no safe way to emit, release and discharge Refinery Contaminants in the Class Area, which is located in a densely-populated area, given the capacity of Refinery Contaminants to cause asthma, cancer, lung disease, nervous system harm, severe headaches, insomnia, dizziness, nausea, vomiting, gastrointestinal pain, and other serious illness and adverse health effects in humans.  The serious health and environmental risks posed by the Refinery Contaminants Defendants emitted, discharged, released, and disposed of in such a densely populated area could not have been eliminated by the exercise of reasonable care on the part of Defendants.

90.     Defendants' emission, release, and discharge of Refinery Contaminants is neither a matter of common usage nor appropriate to the place where it is carried out. Defendants' failure to properly remediate Refinery Contaminants which they emitted, discharged, released and disposed of in the Class Area was neither a matter of common usage nor appropriate to the place where it was carried out.

91.     Separate and apart from acting negligently, at all relevant times Defendants caused injury and damages to plaintiffs and the Members of the Class, and/or their property, through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

92.     As a direct and proximate result of Defendants' misconduct as set forth herein, plaintiffs and the Class Members have suffered and continue to suffer economic losses, such as the loss of value to their property; loss of use and enjoyment of their property; significant annoyance and inconvenience; the destruction of their community and other damages.

**WHEREFORE**, Plaintiffs Carpenter and Ott demand judgment against Defendants for compensatory damages; the cessation of all releases of Refinery Contaminants into the Class Area; noise abatement; odor abatement; interest; costs of suit as provided for by law; and such other relief as the Court may deem just and proper.

## COUNT III
## Negligence and Gross Negligence

93.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

94.     Defendants negligently and improperly maintained and operated the St. Paul Park Refinery. In so doing, Defendants caused the invasion of Refinery Contaminants, noxious odors, noise, debris particles, fumes and vapors onto Plaintiffs' homes, land, and property on occasions too numerous to mention.

95.     A properly operated and maintained facility will not emit these pollutants into neighboring residential areas.

96.     By failing to properly maintain and operate its facility, Defendant failed to exercise the duty of ordinary care and diligence, which it owes to Plaintiffs and Class

Members, to keep noxious odors, Refinery Contaminants, loud noises, debris, and other pollutants from invading Plaintiffs' and Class Members' property.

97.    Defendants breached this duty by intentionally emitting, releasing and discharging Refinery Contaminants, noise, debris particles, noxious odors, fumes, and vapors in the Class Area and allowing such substances and noise to spread on, into, and around Class Members' properties; failing to adequately control and contain such substances and noise; failing to adequately warn Class Members of the nature and extent of such substances and noise; failing to warn Class Members that such substances and noise would migrate onto Class Members' persons and/or properties and failing to properly remediate or abate Refinery Contaminants, noise, debris particles, noxious odors, fumes, and vapors in the Class Area.

98.    The invasion and subsequent damages suffered by Plaintiffs were reasonably foreseeable by the Defendants.  At all relevant times, Defendants knew or should have known that the hazardous and toxic substances, Refinery Contaminants, noise, debris particles, noxious odors, fumes and vapors would eventually enter plaintiffs' and Class Members' persons, properties, air, and surrounding environment.

99.    Plaintiffs and the Class Members, and their properties, have been exposed to Refinery Contaminants, noise, noxious odors, debris particles, vapors and fumes, and other hazardous materials due to Defendants' negligence in the operation of their St. Paul Park Refinery and their wrongful emission, release, and discharge and/or failure to properly remediate hazardous substances.

100.    At all relevant times, Defendants failed to safely and properly dispose of and abate the aforementioned Refinery Contaminants, noise, debris particles, noxious odors, fumes and vapors and failed to advise or warn plaintiffs and Class Members of the dangers associated with same.

101.    Defendants failed to use reasonable care to safeguard those residing in the Class Area and the surrounding environment from injury, significant annoyance, inconvenience or property damage.

102.    The conduct of Defendant in intentionally allowing conditions to exist which caused noxious odors, Refinery Contaminants, and other pollutants to physically invade Plaintiffs' property constitutes gross negligence as it demonstrates a substantial lack of concern for whether an injury resulted to Plaintiffs' property.

103.    Separate and apart from acting negligently, at all relevant times Defendants caused injury and damages to plaintiffs and the Members of the Class, and/or their property, through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

104.    As a direct and proximate result of Defendants' misconduct as set forth herein, plaintiffs and Class Members have suffered and continue to suffer economic losses, such as the loss of value to their property; loss of use and enjoyment of their property; significant annoyance and inconvenience; the destruction of their community and other damages.

**WHEREFORE**, Plaintiffs Carpenter and Ott demand judgment against Defendants for compensatory damages; the cessation of all releases of Refinery Contaminants into the Class Area; noise abatement; odor abatement; interest; costs of suit as provided for by law; and such other relief as the Court may deem just and proper.

<u>**JURY TRIAL DEMAND AND PRAYER FOR RELIEF**</u>

**WHEREFORE**, plaintiffs request that the Court enter an order or judgment against Defendants as follows:

A.      Enter an Order pursuant to Fed. R. Civ. P. 23 permitting this action to be maintained as a class action, appointing plaintiffs Martin Carpenter and Jaclyn Ott as the representatives of the Class and appointing plaintiffs' counsel as counsel for the Class;

B.      Enter judgment in favor of Plaintiffs Carpenter and Ott and the Members of the Class against Defendants for loss of property value, and for all other relief, in an amount to be proven at trial, as to which they may be entitled, including interest, expert fees and costs of this suit;

C.      Enter an injunction requiring Defendants to cease all releases of Refinery Contaminants into the Class Area; implement noise abatement procedures; implement odor abatement procedures;

D.      Award prejudgment and post-judgment interest as provided by law; and

E.      Such other relief as this Court deems necessary, just and proper.

Plaintiffs demand a trial by jury as to all claims so triable in this action.

Dated: October 13, 2021                    By:      */s/ David A. Goodwin*
                                                     Daniel E. Gustafson (MN # 202241)
                                                     Amanda M. Williams (MN # 0341691)
                                                     David A. Goodwin (MN # 0386715)
                                                     Ling S. Wang (MN #399447)
                                                     **GUSTAFSON GLUEK PLLC**
                                                     120 South 6th Street, Suite 2600
                                                     Minneapolis, MN 55402
                                                     Telephone: (612) 333-8844
                                                     Facsimile: (612) 339-6622
                                                     *dgustafson@gustafsongluek.com*
                                                     *awilliams@gustafsongluek.com*
                                                     *dgoodwin@gustafsongluek.com*
                                                     *lwang@gustafsongluek.com*

                                                     Nicholas A. Migliaccio, Esq.
                                                     (*pro hac vice* admission pending)
                                                     Jason S. Rathod
                                                     (*pro hac vice* admission pending)
                                                     Mark D. Patronella
                                                     (*pro hac vice* admission pending)
                                                     **MIGLIACCIO & RATHOD LLP**
                                                     412 H Street N.E., Suite 302
                                                     Washington, DC 20002
                                                     Telephone: (202) 470-3520
                                                     *Nmigliaccio@classlawdc.com*
                                                     *jrathod@classlawdc.com*
                                                     *mpatronella@classlawdc.com*

                                                     ***Counsel for Plaintiffs***