## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Martin Carpenter and Jaclyn Ott on behalf of Themselves and all Others Similarly Situated, | |
| Plaintiffs, | Case Number: 21-cv-02268-PJS-ECW |
| v. | |
| Marathon Petroleum Corporation and St. Paul Park Refining Co. LLC, d/b/a Marathon St. Paul Park Refinery, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS** |
| Defendants. | |

Plaintiffs, Martin Carpenter ("Plaintiff Carpenter") and Jaclyn Ott ("Plaintiff Ott") (collectively, the "Plaintiffs"), on behalf of themselves and all others similarly situated, submit this memorandum in opposition to the *Motion to Strike Class Allegations* (Dkt. 23) (the "Motion" or "Motion to Strike") and *Memorandum of Law in Support of Motion to Strike Class Allegations* ("Def. Mem.") filed by Defendants Marathon Petroleum Corporation and St. Paul Park Refining Co. LLC, d/b/a Marathon St. Paul Park Refinery (collectively, the "Defendants").

## <u>INTRODUCTION</u>

By filing the Motion to Strike, Defendants are asking the Court to take the unfavored and infrequently granted step of striking Plaintiffs' class allegations. They do so by citing to inapplicable caselaw and arguing that it will be impossible for Plaintiffs to meet the requirements set forth in Federal Rule of Civil Procedure 23, while ignoring the wealth of

caselaw showing that cases of this nature can be (and have been) certified as class actions. Indeed, cases just like this one are routinely certified as class actions in both state and federal courts across the country. The evidence assembled and presented throughout the discovery and class certification stages of litigation was key to such determinations.

But here, Defendants essentially seek a ruling on class certification now, before the parties have had any chance to develop *any* class-based evidence in discovery. This baseless request should be denied by the Court, and such extraordinary relief should not be given. Instead, the factual discovery and development of this action should promptly begin so that the question of class certification can be properly analyzed by the Court. However, should the Court find that any of Plaintiffs' class allegations are improperly pled, Plaintiffs respectfully request the opportunity to amend their Class Action Complaint (the "CAC") to cure any purported defects.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading any insufficient defense of any redundant, immaterial, impertinent, or scandalous matter." In ruling on a Rule 12(f) motion, the court has considerable discretion. *See Nationwide Ins. Co. v. Central Missouri Electric Coop. Inc.*, 278 F.3d 742 (8th Cir. 2001). However, this remedy is "drastic" and "often [] sought by the movant simply as a dilatory or harassing tactic." *Donelson v. Ameriprise Fin. Servs.*, 999 F.3d 1080, 1091-92 (8th Cir. 2021) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed.)). "Striking a party's pleading … is an extreme and disfavored measure." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). The Eighth Circuit has also

observed that motions to strike under Fed. R. Civ. P. 12(f) are "infrequently granted." *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977).

Here, in order to surpass the high bar of a Rule 12(f) motion to strike and achieve the disfavored and infrequently granted relief they seek, Defendants must establish that no matter what factual development might take place over the life of the litigation, the requirements of Fed. R. Civ. P. 23 could not possibly be satisfied in this case. *See Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) (holding that where the chance exists that Rule 23 may be satisfied with discovery, the parties must be offered the opportunity to discovery and present documentary evidence on the issue). *See also, Samaha v. City of Minneapolis,* 525 F.Supp.3d 933, 946 (D. Minn. 2021) (denying defendants' motion to strike plaintiffs' class allegations at the motion to dismiss phase noting that "[t]his is not a class certification motion, and Plaintiffs have not had the opportunity to discover and present evidence pertinent to the…proposed class members' claims.") Notably, Rule 23(a) requires that, for a class to be certified, the following elements must be satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).[1]

---

[1] Defendants concede that Plaintiffs satisfy Rule 23(a)(1) and (a)(4) by not addressing these requirements in the Motion.

Additionally, one of the requirements of Rule 23(b) must be met. A Rule 23(b)(1) class can be certified if the Court finds that prosecuting separate actions by or against individual class members "would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or imped their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(A) and (B). A Rule 23(b)(2) class can be certified where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, a Rule 23(b)(3) class can be certified where "questions of law or fact common to class members predominate over any questions affecting only individual members, and [where] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Additionally, when appropriate, "an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).[2] Requirements to alternatively certify a class under each of these

---

[2] Defendants failed to challenge Plaintiffs' request for class certification under Fed. R. Civ. P. 23(c)(4) (*see* CAC, ¶¶ 45, 56) and have, therefore, conceded this point and waived the opportunity to raise any argument regarding the viability of class certification under Fed. R. Civ. P. 23(c)(4) in its reply brief. *See Redking Foods LLC v. Minn Assocs. LP*, No. 13-CV-0002 (PJS/JSM), 2014 WL 754686, at *4 (D. Minn. Feb. 26, 2014) ("By raising this argument for the first time in its reply brief, RedKing violated Local Rule 7.1(c)(3)(B), which provides that '[a] reply memorandum must not raise new grounds for relief or present matters that do not relate to the opposing party's response.' Moreover,

approaches are sufficiently pled in the CAC and Plaintiffs' class allegations should, therefore, remain.

**ARGUMENT**

Defendants urge the Court to take the rare and expressly disfavored step of striking Plaintiffs' class allegations, prior to discovery, to "save party and judicial resources…" Def. Mem. at 23. At this early stage of the litigation, when the Court has not yet conducted a rigorous analysis of the Rule 23(a) prerequisites, this request is inappropriate, and the Court should deny Defendants' Motion to Strike.

## I. Defendants' Motion to Strike is Premature

"While class certification issues may, at times, be 'plain enough from the pleadings,' at other times the court may need to 'probe behind the pleadings before coming to rest on the certification question.'" *See Keech v. Sanimax USA, LLC*, No. 18-683 (JRT/HB), 2019 2019 WL 79005, at *2 (D. Minn. Jan. 2, 2019) (citing to *Gen. Tel. Co. of the Sw. of Falcon*, 457 U.S. 147, 160 (1982)). In denying the defendant's motion to strike, the *Keech* court reasoned that "[a] class may only be certified 'after a rigorous analysis' of the Rule 23(a) prerequisites," noting that the Court would need to "conduct this rigorous analysis and [] 'probe behind the pleadings' before determining whether Plaintiffs' claims can be resolved on a class-wide basis …" *Id*. The *Keech* court concluded that it would exercise its broad

---

'federal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief.'" (citing *Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.,* 491 F. Supp. 2d 871, 878 (D. Minn. 2007)); *see also Smith v. United States,* 256 Fed. Appx. 850, 852 (8th Cir. 2007) ("the district court did not err in dismissing claims raised for the first time in a . . . reply brief.").

discretion and allow fact discovery to proceed, as such would be necessary for the Court to adequately conduct this rigorous analysis under Rule 23. *Id* at *5.

The same conclusion and result should be reached here. Granting Defendants' Motion would preclude the parties from engaging in meaningful discovery and would deny Plaintiffs the opportunity to prove their claims on a class-wide basis. For these reasons and those further articulated herein, Defendants' Motion to Strike should be denied – as has been done recently in many similar nuisance class actions – so that factual discovery and meaningful development of this action may begin.

## II. Class Certification is Routinely Granted in Pollution/Odor/Emissions Nuisance Cases when the Class is Defined by Reference to Objective Criteria

Defendants' Motion brings to the Court's attention only cases that are obviously and materially distinguishable from this one. There are only a few pleading defects that could possibly support a finding that no amount of factual development could support the certification of a class, none of which are present in Plaintiffs' CAC. It is simply not the case that Plaintiffs' claims could never be adjudicated on behalf of a certified class, particularly since cases involving the same types of claims and classes are routinely afforded class treatment. *See* **Exhibit 1** attached hereto, which sets forth numerous nuisance cases similar to this one in which either a class was certified or a motion to strike was denied.

"Common issues predominate in air pollution cases when the paramount issue concerns whether a plant's emissions are substantially interfering with the local residents' use and enjoyment of their real and personal property." *Stanley v. U.S. Steel Co.*, 2006 WL

724569, *5 (E.D. Mich. Mar. 17, 2006). This is particularly true where, as here, common evidence will be offered to show the frequency, intensity, and dispersion pattern of Defendants' emissions. "Deciding liability will consume the vast majority of the time, evidence and witness presentation. Also, air testing and pollution data, pollution experts ... witnesses and documents will be utilized for each of the putative class members, thus common issues predominate over any individual issues that exist." *Id*. at *7. In *Stanley*, the Court certified a class of property owners and renters in a geographic boundary alleging property damage caused by air emissions from a steel mill. *See also Keech*, 2019 WL 79005, at *3 (denying the defendant's motion to strike because "it is conceivable – depending on the level of Sanimax's emissions – that [plaintiffs] could prove these injuries on a class-wide basis.").

In another recent case involving similar odor allegations, the court granted class certification and noted that "given evidence that residents within the Class Area were similarly injured—although the degrees of impact may vary—the common issues I have discussed respecting [d]efendant's conduct and odorous emissions are subject to generalized proof." *Batties et. al v. Waste Management of Pennsylvania, Inc.*, No. 14-7013 (E.D. Pa. May 11, 2016) (included in **Exhibit 1** at 26). The court in *Batties* certified a class of owner/occupants and renters within a geographic boundary in the vicinity of the defendant's municipal solid waste landfill that brought claims for nuisance and negligence/gross negligence. *Id.*

Further undermining Defendants' assertion, another federal court also granted class certification in a similar case, holding that "having hundreds of property owners file the

same action against the same defendants for the same types of injury is a clear waste of judicial resources." *Ponca Tribe of Indians v. Cont'l Carbon Co.*, No. CIV-05-445-C, 2007 WL 28243, at *9 (W.D. Okla. Jan. 3, 2007). The *Ponca Tribe of Indians* court certified a class of Native Americans owning interests in real property situated within a geographic boundary around the defendant's carbon black plant, and reasoned as follows:

> "questions regarding the production of [a contaminant], how it may be discharged into the environment, where it may go after such discharge, and what effect it has on property, among others, are clearly common to the claims of all Plaintiffs. Further, the legal theories on which the Plaintiffs rely are dependent on the same law. Thus, common questions of law and fact predominate. To the extent it becomes necessary to address damages issues on an individual basis, that issue may be resolved at a later date…"

*Id.* at *8.

Other recent air emissions and/or odor nuisance cases for property damage in which class certification has been granted include *McCarty v. Okla. City Landfill, LLC*, No. CIV-12-1152-C (W.D. Okla. April 11, 2016) (certifying a class of owner/occupants and renters within geographic boundaries near the defendant's landfill) (**Exhibit 1** at 78); *Ng. v. International Disposal Corp. of California*, Case No. 112CV228591 (Santa Clara CA Superior Court Aug. 1, 2016) (certifying a class of owner/occupants and renters within geographic boundaries near the defendant's landfill) (**Exhibit 1** at 88); *Goreham v. Grain Processing Corporation*, No. LACV021232 (Muscatine Cty. Iowa District Ct., Oct. 28, 2015) (certifying a class of owner/occupants and renters within 1.5 miles of the defendant's corn milling plant) (**Exhibit 1** at 99); ; *Arnold, et al. v. Detrex*, Case No. 16-cv-872684 (Cuyahoga County Court of Common Pleas Nov. 16, 2017) (certifying a class of

owner/occupants and renters within 2.0 miles of the defendant's chemical plant) (**Exhibit 1** at 148); *Maroz v. Arcelormittal Monessen, LLC*, No. 15-cv-00771-AJS (W.D. PA Nov. 14, 2016) (certifying a class of owner/occupants and renters of real property residing within 1.5 miles of the defendant's coke plant) (**Exhibit 1** at 151); *Dabney, et al. v. Tamino US, Inc.*, Case No. 15-cv-533 (N.D FL Dec. 12, 2017) (certifying a class of owner/occupants and renters within 2.0 miles of the defendant's amine manufacturing facility) (**Exhibit 1** at 191).

Additional similar cases in which certification has been granted and/or upheld include *Mejdreck v. Lockformer Co.*, No. 01-c-6107, 2002 WL 1838141 (N.D. Ill. Aug. 12, 2002) (environmental claims including nuisance and negligence certified); *Stoll v. Kraft Foods Global, Inc.*, No. 1:09-CV-0364-TWP-DML, 2010 WL 3702359 (S.D. Ind. Sept. 6, 2010) (class of residents certified to pursue environmental claims); *Collins v. Olin Corp.*, 248 F.R.D. 95 (D. Conn. 2008) (class of landowners seeking damages loss of use and enjoyment granted certification for claims that waste at a landfill contaminated their properties); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597 (E.D. La. 2006) (nuisance and negligence claims certified in oil spill); *Warner v. Waste Mgmt.*, 36 Ohio St. 3d 91 (Ohio 1988) (affirming in relevant part certification of class pursuing negligence and nuisance claims against operators of a landfill); *Jones v. Capitol Enters.*, 89 So. 3d 474 (La.App. 4 Cir. 2012) (nuisance claim for effects of water tower sandblasting project certified); and *Hill v. City of Warren*, 276 Mich. App. 299 (Mich. Ct. App. July 24, 2007).

In sum, Defendants' position, upon which their entire Motion to Strike rests, that these cases are rarely certified or that it would be impossible for a class (or subclasses) to

be certified here is simply not true. There is nothing about this case that makes it so different from the cases cited herein, and included in **Exhibit 1**, that no factual development could result in Plaintiffs' and Class Members' satisfaction of Rule 23's requirements. As such, Defendants' Motion to Strike should be denied.

**III. Plaintiffs Plead Adequate Facts to Move Forward with Their Nuisance, Strict Liability, and Negligence Claims in the Context of a Class Action**

Defendants initially argue that Plaintiffs will be unable to sustain their class action allegations against Defendants because such will require "individualized proof of causation and injury." Def. Mem. at 5. In essence, Defendants argue that nuisance class actions such as this are impossible to certify. As detailed *supra* and in **Exhibit 1**, this is simply not true, as such cases are routinely granted class certification in state and federal courts across the country.

As to Plaintiffs' nuisance claim, Plaintiffs set forth a wealth of specific facts illustrating that Defendants' emission, release, and discharge of (and/or failure to properly remediate) hazardous and toxic substances, refinery contaminants, noise, debris particles, noxious odors, and fumes and vapors has interfered with Plaintiffs' and Class Members' common use and enjoyment of their property, air, and surrounding environment, causing them real harm and damages. CAC, ¶¶ 4-6, 12-17, 30-35, 38, 62-64, 74. Plaintiffs also allege each element of their strict liability and negligence causes of action against Defendants. *Id*. ¶¶ 86-104. All three causes of actions pled by Plaintiffs in their CAC are supported by the many specific, well-pled facts in the CAC, including but not limited to the following:

"26.    Records requests made to the Minnesota Pollution Control Agency have also unearthed years of complaints received concerning the St. Paul Park Refinery—including reports of "terrible odor outside [that] has been going on for over a week, and [is] now seeping into building[s]" that cause "headaches", "tight chest" and make it "hard to breath". See Exhibit 1. Other residents have reported feeling lightheaded as a result of the St. Paul Park Refinery pollution. Id. As a result of the refinery activity, residents also report waking up with headaches and feeling ill upon waking.

27.    There are ample records to corroborate residents' complaints regarding the St. Paul Park Refinery. According to the EPA, there have been four formal enforcement actions and two informal actions against the St. Paul Park Refinery in the past five years. (Footnote omitted.)

28.    In 2018 alone, the St. Paul Park Refinery's emissions included over 850,000 pounds of carbon monoxide, over one million pounds of nitrogen oxides, tens of thousands of pounds of particulate matter, over 148,000 pounds of sulfur dioxide, and over 758,000 pounds of volatile organic compounds. (Footnote omitted.)

***

36.    Defendants, despite their knowledge of the serious health and environmental effects associated with exposure to Refinery Contaminants and wastes, handled, stored, generated, processed, released, discharged and emitted Refinery Contaminants, wastes, particulate matter, vapors, debris particles and fumes throughout the Class Area, while failing to warn residents of the dangers such activities posed.

37.    Defendants, again despite their knowledge of the serious health and environmental effects associated with Refinery Contaminants, and despite their knowledge of the impacts of Refinery Contaminants, wastes, noise, noxious odors, vapors, debris particles and fumes from their St. Paul Park Refinery on

plaintiffs and the Class Members, failed to abate the
release, discharge and emission of Refinery
Contaminants, wastes, noise, noxious odors, vapors,
debris particles and fumes."

*See* CAC, ¶¶ 26-28, 36-37.

Despite these allegations, Defendants baselessly assert that under Minnesota law,
Plaintiffs' claims for nuisance, strict liability, and negligence are too individualized to
sustain a class action. Def. Mem. at 10, 12-13. On the contrary, and as set forth below,
Plaintiffs allege sufficient facts to state a claim for each and Defendants' Motion to Strike
should be denied.

### a. Nuisance

Minnesota private nuisance claims require that Plaintiffs show that they or their
property have been affected "injuriously in a manner different from" the public and that
the injury suffered is "special or peculiar" to them. *Hill v. Stokely-Van Camp, Inc.*, 109
N.W.2d 749, 752-53 (Minn. 1961).[3] In Minnesota, "the existence of a nuisance is

---

[3] Defendants rely heavily on *Hill v. Stokely-Van Camp, Inc.*, 109 N.W.2d 749 (Minn. 1961)
in their Motion, arguing that "the individualized proof required for nuisance claims is
antithetical to the very requirements … of Rule 23 (requirements Plaintiffs must prove they
can meet to survive the motion to strike)." *See* Def. Mem. at 12. This low threshold so
graciously highlighted by Defendants (that Plaintiffs must only prove they *can* meet the
requirements under Rule 23) is easily satisfied here, as set forth throughout this
Memorandum and further demonstrated by the multitude of cases in **Exhibit 1**.
Additionally, Defendant is wrong to rely so heavily on a 1961 case that was not adjudicated
as a class action and, therefore, does not contain the necessary rigorous analysis of the facts
thereof under Rule 23. Furthermore, under the doctrine of *res judicata*, which is center
stage in *Hill* yet not at issue in this case, the issues presented by the plaintiff had to be
"identical in the two suits." *Hill v. Stokely-Van Camp, Inc.*, 109 N.W.2d at 751. This is, of
course, a requirement that far exceeds the prerequisites of commonality, typicality, and
predominance under Rule 23. Additionally, "much of plaintiff's difficulty" in *Hill* arose
from his "failure to distinguish a public nuisance from a private one," another failure not

determined on the basis not only of the defendant's activity, but also the gravity or materiality of its harmful effect on the plaintiff." *Schmidt v. Vill. of Mapleview*, 196 N.W.2d 626, 628 (Minn. 1972). As such, a "defendant's liability for nuisance is determined by balancing 'the social utility of defendants' actions with the harm to the plaintiff.'" *Johnson v. Paynesville Farmers Union Co-op. Oil Co.*, 817 N.W.2d 693, 706 (Minn. 2012) (quoting *Highview N. Apartments v. Ramsey Cty.*, 323 N.W.2d 65, 71 (Minn. 1982)).

Just as the court in *Keech* correctly observed, the same remains true here: "Although Plaintiffs must prove that their injuries differ from the public at large, it is conceivable – depending on the level of Defendants' emissions – that they *could prove* these injuries on a class-wide basis" (emphasis added). *Keech*, 2019 WL 79005, at *3. It is indeed conceivable that the emissions from Defendants' facility are so pervasive within the class area identified in Figure 1 of the CAC that every person within Plaintiffs' proposed Class has been injured in a manner distinct from the public at large and to a degree that outweighs the social utility of Defendants' facility. Moreover, while Defendant attempts to argue that "the environmental claims of the putative class will invariably depend on each plaintiff's location, proximity, direction and distance from the Refinery" (*see* Def. Mot. at 15), Defendants fail to consider the option available to the Court and raised in ¶ 41 of Plaintiffs' CAC to simply establish and certify geographical subclasses based upon these differing factors that will be explored and investigated rigorously in discovery. This would certainly obviate Defendants' purported concerns regarding Plaintiffs' individualized damages

_____

at issue here. *Id*. at 752. For these reasons, *Hill* is inapposite and unpersuasive as to Defendants' request to strike Plaintiffs' class allegations.

resulting solely from differing geographic locations. Thus, it is clear that fact discovery is necessary to enable the Court to conduct a rigorous analysis of the class allegations of nuisance in these proceedings.

Defendants also cite to four Eighth Circuit cases and a District of Minnesota case in support of its position that Minnesota nuisance claims cannot be resolved on a class-wide basis. However, these cases are not persuasive. For instance, *Webb v. Exxon Mobil Corporation* did not involve a nuisance claim and was decided *after* plaintiffs had the benefit of expert discovery. 856 F.3d 1150, 1153-1157 (8th Cir. 2017). *Smith v. ConocoPhillps Pipe Line Company* was also decided only *after* fact discovery, which included testimony from at least three experts, sampling of the contamination site and nearby properties, and testing of drinking water on numerous properties. 801 F.3d 921, 924 (8th Cir. 2015). Ultimately, the Eighth Circuit held in *Smith* that the district court abused its discretion by certifying a class "in the absence of evidence showing class members were commonly affected by contamination on their property." *Id*. at 927. Here, due to the early stage of the proceedings, the Court has no evidence to consider.

The *Donelson* case did not involve a nuisance claim and, instead, dealt with federal securities law and fraudulent misrepresentation claims clearly distinguishable from the claims in this case. *Donelson*, 999 F.3d at 1093-94. In *Donelson*, the court reversed the district court's denial of the defendants' motions to strike the class-action allegations and compel arbitration, reasoning that it was "apparent from the pleadings that [the plaintiff] could not certify a class," and that "the class claims would not be cohesive" due to the individualized determinations that would need to be made in addressing the individual

plaintiff's claims for violations of the Securities Exchange Act (including claims of misrepresentations or omissions of material fact, acts that operated as a fraud or deceit, causations, scienter, and economic harm caused by the fraudulent activity). *Id.* at 1093-94. The *Donelson* court further observed that there was no private cause of action for the plaintiff's breach of fiduciary duty claim under 15 U.S.C. § 80b-6, thus making it, once again, clear from the face of the pleadings that a class could not be maintained. *Id.* Here, there are no claims of fraudulent misrepresentations and the accompanying requirement to satisfy Rule 9's heightened pleading standard. Nor are there claims here under which a private cause of action is unavailable.

Defendants' reliance on *Wilcox v. State Farm Fire and Cas. Co.*, No. 14-cv-2790 (RHK/FLN), 2016 WL 6908111, at *4-5 (D. Minn. Sept. 7, 2016) is similarly inapposite here since the claim at issue arose from a homeowner's insurance contract dispute, and because the plaintiffs "concede[d] that moving forward as a class could require mini-trials to make these claimant-specific determinations." *Id*. at *4. Here, Plaintiffs make no such concession, and the harms suffered by Plaintiffs and Class Members are not so individualized to warrant that their claims be considered on a case-by-case basis. *Id.* at *5.

Finally, Defendants rely heavily upon *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016) to suggest that certification of this case in the Eighth Circuit is not possible. Def. Mem. at 15. However, *Ebert* actually shows why Defendants' motion should be denied. *Ebert* was given the benefit of full-scale review of discovery and the relevant evidence in class certification briefings and was *actually certified* and then later decertified after a determination that that there were issues that still needed to be addressed individually. *Id.*

at 480. Specifically, the class was decertified because the plaintiff property owners in *Ebert* claimed damages from the intrusion of the chemical substance trichloroethylene ("TCE") in the form of groundwater contamination. *Id.* at 475. Upon review of the evidence that was presented and rigorously analyzed, the Eighth Circuit ruled that the case was best suited for an individual basis to review whether, among other things, the TCE chemicals intruded onto the property of each plaintiff and whether the defendant played a role in the intrusion. *Id.* at 481.

Here, without the benefit of *any* evidence, it is entirely premature for the Court to determine whether the Class may be certified based upon a ruling in a different case with different parties and facts to be explored and analyzed. It would be wholly inappropriate for the Court to do as Defendant suggests and simply "substitute[] 'refinery emissions' for 'TCE'" to conclude that "the class proposed here is identical to the class rejected in *Ebert*." Def. Mot. at 16. *Ebert* merely shows that in some circumstances, the specific evidence in a specific groundwater contamination case involving TCE chemicals may indicate that class certification is not warranted. This is not a groundwater contamination case involving TCE chemicals. In *Keech*, the court rejected a similar argument that attempted to use the Eight Circuit's *Ebert* decision to support striking class allegations in an emissions nuisance class action. *Keech*, 2019 WL 79005 at \*4 (finding *Ebert* unconvincing and denying the defendant's motion to strike, reasoning that it "[could] not say at this stage that it would be impossible for Plaintiffs to offer a class-wide theory of resolution … without the benefit of discovery.").

Defendants cannot, in good faith, claim that moving forward with Plaintiffs' class allegations will, in any way, prejudice Defendants in this action. This is especially true as there exists a plethora of similar class action cases in which class certification has ultimately been granted, as discussed *supra*. (*See also* **Exhibit 1**.) Thus, the Court should deny Defendants' Motion to Strike.

### b. Strict Liability

To prove strict liability, a plaintiff must show that the defendant engaged in an "inherently dangerous or ultrahazardous activity" that caused injury. *Sachs v. Chiat*, 162 N.W.2d 243, 246 (Minn. 1968). Defendants cite to *Mahowald v. Minnesota Gas Co.*, 344 N.W.2d 856, 862 (Minn. 1984) and *Ferguson v. Northern States Power Co.*, 307 Minn. 26, 32, 239 N.W.2d 190, 194 (Minn. 1976) in support of their position that "it is *unlikely* Minnesota will extend the doctrine of strict liability to refinery omissions" (emphasis added). Def. Mot. at 13, footnote 7. However, something being "unlikely" is not enough to uphold a motion to strike seeking unfavored and infrequently granted relief. Whether the doctrine of strict liability should be extended to refinery omissions raises numerous questions of fact that should be further explored at a later juncture of this litigation. Indeed, the *Mahowald* and *Ferguson* courts conducted rigorous analyses of the facts gathered in discovery to arrive at their conclusions regarding what was and was not to be labeled as a dangerous or ultrahazardous activity. Further, refinery emissions are not the only wrongdoing raised in Plaintiffs' class allegations. *See* CAC ¶¶ 5-8.

This Court should conduct a similar analysis to the analyses conducted by the *Mahowald* and *Ferguson* courts before opining on whether the doctrine of strict liability

will extend to the class allegations of wrongdoing in the CAC. *See also Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 468 (D.N.J. 2009) (finding certification of plaintiffs' nuisance claims appropriate and further observing that "whether [defendant's] release of PFOA constitutes an 'abnormally dangerous activity' was a common issue as to the plaintiffs' strict liability claim that would be separately certified under Rule 23(c)(4)). As such, Defendants' Motion to Strike should be denied.

### c. Negligence and Gross Negligence

Minnesota law defines negligence as "the failure 'to exercise such care as persons of ordinary prudence usually exercise under such circumstances.'" *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011) (quoting *Flom v. Flom*, 291 N.W.2d 914, 916 (Minn. 1980)). To prove negligence, Plaintiffs must prove: "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." *Id.* In *Keech*, the court found that striking class allegations of negligence "at this stage would be premature," reasoning that while "[i]njury and proximate cause may require a more individualized determination … the Court cannot say that such issues would be impossible to resolve on a class-wide basis." *Keech*, 2019 WL 79005, at *4.

Here, whether a duty of care existed, whether the duty was breached by Defendants, the issue of proximate cause, and the issue of injury are issues that, as alleged by Plaintiffs throughout the CAC, are resolvable on a class-wide basis. To the extent Defendants would have Plaintiffs prove their negligence claim at this juncture of the litigation is unclear. Nevertheless, Defendants' contentions regarding Plaintiffs' negligence claims are without

merit as Plaintiffs have set forth each element of their negligence and gross negligence claims and supported such claims with specific facts. CAC ¶¶ 26-28, 36-37, 93-104. And as has been repeatedly mentioned throughout this Memorandum, cases such as this are routinely granted class certification. (*See* **Exhibit 1**.)

For these reasons, and because Defendants cannot, in good faith, predict the outcome of a class certification motion based on rote assertions at the pleadings stage of this litigation, Defendants' Motion to Strike should be denied.

## IV.	Defendants Offer Little Support for the Argument that the Standard Defenses to Plaintiffs Claims Preclude Class Certification

Defendants argue that Plaintiffs cannot meet the class certification requirements because the standard defenses to nuisance, strict liability, and negligence under Minnesota law require individualized analyses. Def. Mem. at 19. However, Defendants offer little support for this argument. In *Darms v. McCulloch Oil Corp.*, the Eighth Circuit held only that the district court did not abuse its discretion in denying class certification because common questions of law or fact did not predominate under Rule 23(b)(3). 720 F.2d 490, 493 (8th Cir. 1983). While one factor supporting the district court's decision was that the defenses raised would vary based on the circumstances of each individual case, that factor was mentioned with a litany of other issues requiring individualized determinations. *Id.* Further, the case *In re St. Jude Med. Inc. Silzone Heart Valves Prod. Liab. Litig.* also cited by Defendants involves claims for medical monitoring defined by the court as a "highly individualized remedy," as "their monitoring and treatment will depend on singular

circumstances and individual medical histories." *In re St. Jude Med.*, 522 F.3d 836, 840-841 (8th Cir. 2008). Moreover, the CAC does not allege claims for medical monitoring. Thus, all that *Darms* and *St. Jude* show in this context is that, in some circumstances, defenses are too individualized for class certification to be appropriate. However, a decision on this issue is not yet properly before the Court considering the parties have not yet conducted any discovery. Though Defendants believe they can predict exactly what evidence will be revealed in discovery, their blind forecast on such topics and what conclusions the Court may or may not reach following its rigorous analysis of such facts is irrelevant at this stage of the proceedings. As such, the Court should deny Defendants' Motion to Strike because "[t]he fact that different defenses may come up and that these defenses may require some individualized determinations does not warrant striking class allegations at this early stage." *Keech*, 2019 WL 79005, at *4.

## V. It is Not Yet Clear Whether Plaintiffs' Theories of Damages will Require Individualized Determinations

Defendants argue that class allegations should be struck because determining Plaintiffs' damages will require individualized determinations. Def. Mem. at 13. However, the Court may bifurcate questions of liability (to be determined in a first phase of trial) and damages (to be determined in a second phase, if necessary). Such a result is permitted pursuant to Fed. R. Civ. P. 23(c)(4), which provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Thus, if Plaintiffs prevailed in showing that Defendant created a nuisance, the Court would then decide whether to allow the certified Class to move forward to a damages phase. *See*

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 492 (7th Cir. 2012) (holding trial court abused discretion by failing to certify class under Rule (c)(4) for purposes of liability and injunctive relief and finding damages issues could be resolved at "the next stage of the litigation"); *In re Nassau County Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006) (concluding "a court may property employ [Rule 23(c)(4)] to separate the issue of liability from damages").

Further, "that the amount of damage suffered by each class member may be an individual inquiry does not defeat class action treatment." *Khoday v. Symantec Corp., Civ.* No. 11-180 (JRT/TLN) 2014 WL 1281600, at, *32 (D. Minn. Mar. 31, 2014). Rather, at class certification, Plaintiffs "must present a likely method for determining class damages," although they need not "show that [their] method will work with certainty at this time." *Id*.

Here, Plaintiffs are not yet seeking class certification. They merely wish to proceed to discovery so that they can determine and propose such a method. Furthermore, it is not clear that all of Plaintiffs' theories of damages will require individualized determinations. Plaintiffs seek injunctive relief, which would likely be designed to immediately impact the entire class. As to damages for loss of use and enjoyment of property, other courts have approved the use of formulae to calculate such damages across the plaintiff class, thus avoiding the need for individualized determinations. *See Freeman v. Grain Processing Corp.*, 895 N.W.2d 105, 125 (Iowa 2017).

## VI.    A Class Action is Superior to Alternative Adjudicative Methods

For the same reasons set forth herein regarding the prematurity of Defendants Motion to Strike, Defendants' argument regarding superiority of the class action device

and its applicability here should also be rejected. *See* Def. Mot. at 20-21. Defendants' argument that class action litigation would be an inferior mechanism for adjudicating the claims at issue in these proceedings is relies only upon their insupportable argument, without fact discovery and a rigorous analysis of such facts, that Plaintiffs' and putative Class Members' claims are too individualized for class-wide resolution. This argument should, likewise, be rejected by the Court and Plaintiffs' allegations in the CAC that a class action is superior to all other available methods for the fair and efficient adjudication of this matter, and that the proposed class action is manageable, should stand. *See* CAC, ¶55.

## VII. Plaintiffs' Class Allegations Under Rule 23(b)(1) and 23(b)(2) should not be Stricken

Contrary to Defendants' argument that Plaintiffs Rule 23(b)(1) class allegation is "merely a perfunctory allegation" that should be stricken (*see* Def. Mem. at 22), the requirements set forth in Rule 23(b)(1) are alleged in the CAC and easily satisfied here. *See* CAC, ¶52, 57. Defendants' misleading and nonsensical arguments that no such allegations are made, and that application of Rule 23(b)(1) would not be appropriate here should be rejected by the Court. Likewise, the requirement of Rule 23(b)(2) that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole" and the more stringent cohesiveness requirement thereunder are met here. Indeed, the CAC contains well-pled allegations of a refusal, by Defendants, to act on grounds that apply generally to the class. *See* CAC ¶¶ 36-37, 53, 69. Defendants' refusal to mitigate the class-wide harms being caused directly by their harmful emissions, despite

their knowledge of such wrongful and harmful actions, makes injunctive relief or corresponding declaratory relief, as requested by Plaintiffs, appropriate respecting the Class as a whole. *See H & T Fair Hills, Ltd. v. All. Pipeline L.P.*, No. 19-cv-1095 (JNE/BRT), 2021 WL 2526737, at *13 (D. Minn. June 21, 2021) (alternatively certifying a class under Rule 23(b)(2) for the plaintiffs' declaratory judgment claim following dismissal of plaintiffs' nuisance claim, which fell outside the statute of limitations).

For the same reasons as set forth throughout this Memorandum, it would be premature for the Court to come to any different conclusion regarding the requirements set forth under Rule 23(b)(1) and(b)(2) without first allowing the parties to engage in fact discovery so that the Court can conduct a rigorous analysis of such facts. Thus, Defendants' Motion to Strike should be denied.

## CONCLUSION

Cases brought seeking damages stemming from emissions are routinely certified as class actions, as demonstrated by the numerous recent decisions cited herein and attached hereto. This case is no different. The class does not suffer from any fatal flaw that would, as Defendants baselessly argue, make class certification impossible. Defendants have failed in every respect to carry the heavy burden of establishing that no factual development could possibly result in the satisfaction of Rule 23's prerequisites. In fact, given the facts of this case and the frequency with which similar cases are certified, it is highly likely that factual development will support the certification of a class. Defendants' motion is, at its core, a waste of the resources of the Court and the parties and, as such, should be denied so that factual discovery and development of this action may begin.

Alternatively, should the Court find that any of Plaintiffs' class allegations are improperly pled, Plaintiffs respectfully request that the Court grant them leave to amend to cure any purported defects.

Dated: January 26, 2022

Respectfully Submitted,

By: */s/David A. Goodwin*
Daniel E. Gustafson (#202241)
Amanda M. Williams (#0341691)
David M. Goodwin (#0386715)
Ling S. Wang (#399447)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
awilliams@gustafsongluek.com
dgoodwin@gustafsongluek.com
lwang@gustafsongluek.com

Nicholas A. Migliaccio*
Jason S. Rathod*
Mark D. Patronella*
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Suite 302
Washington, DC 20002
Telephone: (202) 470-3520
Nmigliaccio@classlawdc.com
jrathod@classlawdc.com
mpatronella@classlawdc.com

*Counsel for Plaintiffs*
***Admitted Pro Hac Vice***